Page number 21-1163, et al. Cherokee County Cogeneration Partners, LLC, Petitioner versus Federal Energy Regulatory Commission. Mr. Hughes for the petitioner, Ms. Berry for the respondent, Mr. Zetling for the interviewer. All right, Council for Petitioner, we will hear from you. Good morning. May it please the court, Paul Hughes for Petitioner, Cherokee County Cogeneration Partners. There are a few essential points that are not in dispute in this case. The first is the existence of the comparability principle under the Federal Power Act. That arises from the statutory requirement that a public utility's rates must be non-discriminatory. The second is that a generator may normally bring a FERC Section 205 proceeding to enforce its rights under this comparability principle. The question presented here is whether FERC's regulation implementing PIRPA has stripped FERC of this jurisdiction. Generally, FERC does have jurisdiction. There's two factors, right? When you look at the regulation, which you don't challenge. One of which, of course, is the argument you raise in your brief of this court, that the element of power you're talking about is not energy. Or capacity. That's one factor. Yes, Your Honor. And the second factor is whether or not the arrangement was pursuant to PIRPA, a state implementation of PIRPA. Yes, Your Honor. You can win on this case if you win on either factor. Right? Yes, Your Honor. But the comparability question is subordinate to that, isn't it? Well, I think it's the initial place to begin, Your Honor. I don't see that. Because I'm looking at what jurisdiction first. Your Honor, I agree with everything you said. We have to win on one of those two points. And if we win on either of those two points, then FERC erred and the court would vacate and remand. So I certainly agree with that. Well, why don't you focus on those two points? Because there's a challenge to both of them by FERC here in this court. Thank you, Your Honor. So to turn to the first point we raised in our brief, that this was not pursuant to a state's implementation of PIRPA. The first point is FERC just did not address this precise argument. FERC addressed a different argument in saying that in its view, that the interconnection agreement was quote unquote jurisdictional to South Carolina. But that's not what the regulation- Well, first of all, the problem is, did you address the issue properly before this court? Or excuse me, did you address it properly in the petition for re-hearing? Oh, absolutely, Your Honor. So for example, at joint appendix page 352, we made this argument quite clearly. We said the commission's sole rationale that the interconnection is not subject to the commission's jurisdiction is simply irrelevant. And I'll stop reading, but we continue to go on. I'm not sure I understand the argument you presented in the petition for re-hearing. What is the argument you presented in the petition? So with respect to this first element we're discussing, Your Honor, as to whether or not this was an implementation pursuant to PIRPA, what FERC had said in the initial order is they had said that this is subject to South Carolina jurisdiction, not FERC jurisdiction, and they stopped. What we explained in our re-hearing petition was consistent with our original answer, is that's asking the wrong question. The question is not whether it is FERC jurisdictional or South Carolina jurisdictional, it is whether it is pursuant to a state's implementation of PIRPA. And those are not the same thing, and FERC didn't answer the right question. But is this, are these couple of sentences here on page 352 enough to preserve the issue under our precedents, which are really very strict? I absolutely think so, Your Honor. We said in no uncertain terms, and when this continues on page 352, we made exactly the argument as we said in this middle paragraph, rather as explained in Cherokee's earlier pleadings, its sales of reactive service are not made pursuant to a state regulatory authority's implementation of section 210 of PIRPA, and are instead fully subject to commission regulation under section 205 of the Federal Power Act. Well, why weren't they, you don't explain in the petition for re-hearing what you argued before us. Well, that is, I mean, that is the essential grab amount of this argument is that these are not subjects or do not fit within that regulatory framework. And FERC has made quite clear what that means. In a 2005 regulation, this is 113 FERC 61,020, paragraph 26. It says that these, quote, sales are at rates pursuant to contracts or obligations approved by state regulatory authorities. In South Carolina, and this is in FERC's brief at page nine, in the, quote, unquote, small power production and co-generation facility order that they entered in 1981, that's order 81-214 at page 11, says exactly the same thing. Both FERC and South Carolina agree that to be pursuant to a state's implementation of PIRPA, it has to be filed with the commission. And this large generator interconnection agreement, there's no evidence it was ever filed  and doesn't qualify as a state's implementation of PIRPA. Isn't it fair to say that, well, here's an interesting question. The interconnection, if there had been a dispute concerning the interconnection agreement, to whom would it have gone? It's not entirely clear, Your Honor, on the record. It's possible that that dispute could go to the South Carolina Commission. It seems to me, obviously, it would go to the South Carolina Commission. So then, isn't it implementation of PIRPA? No, Your Honor, it's not an implementation of PIRPA. Well, first, FERC never said it was an implementation of PIRPA, and it may well not be, because there are other ways to have interconnection agreements that are independent of PIRPA. So, for example, Duke has to have an open access transmission tariff pursuant to FERC rules. That's FERC order 888, a FERC order that was implemented in 1996. That would be an independent standalone basis for the interconnection agreement that would be unrelated or irrelevant to PIRPA. The essential point, though, is FERC didn't address whether or not this interconnection agreement was pursuant to PIRPA, and that's the core issue. We're guessing here because FERC didn't- But FERC did cite quite clearly and explicitly its order 2003, cited it both in its initial decision and in its rehearing opinion. Wasn't that- And Your Honor, that is- Additional grounds. All right, my apologies. Wasn't that the jurisdictional grounds that FERC relied upon? And our essential point, Your Honor, is that's asking the wrong question or answering the wrong question. They said that it is subject to South Carolina jurisdiction. And our essential point on this first prong is that there are two distinct issues to which is it FERC or South Carolina jurisdictional. That's one issue that FERC addressed. FERC did not address the separate issue of was this an implementation of PIRPA or pursuant to the state's implementation of PIRPA. And the answer to that was unaddressed by FERC. And even the answering the question that it is subject to FERC jurisdiction does not answer that second question as to whether or not it is an implementation of PIRPA. But again- What did you say in the petition for a hearing on that question? Well, that's, I think, precisely- You have one sentence, just as my colleague points out, but you didn't really make the argument you're making in your brief, or you're making here. I think we do make precisely this argument in the brief, Your Honor. And what we're explaining to FERC is they have to find a basis to say that this is- Where, besides that first sentence, what did you say? Well, it's the whole paragraph, Your Honor. And then the analysis carries over onto Joint Appendix page 353 as well. But in that paragraph, we explained that they make the argument about being jurisdictional. We explained that that argument is irrelevant, that rather what the question is is is this pursuant to the state's implementation of PIRPA, and that deciding the jurisdictional status is not deciding this separate, more precise question that's asked under the regulation. And so on that basis alone, we think the most straightforward disposition of the case is to recognize that FERC did not address the precise, particular question that arises under the regulation that was presented to FERC. It did not answer this question after it was specifically teed up in the rehearing petition. And then the discussion we're having as to whether or not jurisdictional sweeps within that, that's the argument that FERC has made on the substance. It was not enhanced. I thought you were arguing here that FERC did not respond to the other question, which was the comparability standard. That's what I thought your major argument here was, or in the rehearing petition. No, Your Honor, our point has been that FERC didn't respond to the fact that this was outside the scope. Did you not make the argument they didn't respond to the comparability principle? Oh, yes, we explained that as well. And what's that got to do with the price of tea? Well, Your Honor, that is part of the answer as to why FERC's determination that this is subject to South Carolina jurisdiction is not the end of the matter, because there is separate jurisdiction under Sections 205 and 206. But I still don't see what the comparability principle has to do with the FERPA question. Well, Your Honor, the interconnection between those is because FERC seems to think that if this is subject to interpretation by the commission, by the South Carolina commission, excuse me, that takes it outside of FERC and the comparability falls out, and that's wrong. And that's the point that we're making of why that's wrong. The comparability goes to the amount of money you're entitled to, really. It doesn't really go to jurisdiction. Well, I think it may go to both, Your Honor, because again, this presses back against FERC's merits argument that the decision by FERC that this is South Carolina jurisdictional in their view disposes of this case because they suggest that takes the comparability claim off the table. And our explanation is that's just flatly wrong because the comparability principle exists independent of the interconnection agreement. It exists under the principles of section 205 and 206, which apply unless they're stripped. And the court is quite correct in the initial question asked of me, again, to find that FERC erred in dismissing, we do need to win on one of those two grounds. But the tie here is to explain why FERC's finding of that this agreement is South Carolina jurisdictional does not resolve the matter of the comparability principle. If I, I'd be pleased to turn to the second argument for a moment, although I see over, thank you, Your Honor. So to- If you can take one minute. Thank you, Your Honor. As to the second prong, we explained why reactive power doesn't qualify within energy or capacity. As we explain our briefs, these are very technical terms that FERC uses with purpose and throughout its regulations, it separately uses ancillary services of which reactive power is part. Counsel, I would make three points. The first of which is, I think you make an elegant argument in the brief on the energy and capacity point. However, number one, I think that argument was not presented in the petition for your hearing and it is not covered by Columbia Gas because from the very beginning, you should have been recognizing that you had to win on one of those two issues. So you should have, you had to present them in the rehearing petition and you did not. And this is not like Columbia Gas where the government or FERC comes up with an entirely new issue. It was an issue that you had raised in your initial answer, but you didn't raise in the petition for rehearing. So even though it's an elegant argument, I don't think it's properly before us, number one. Number two, it's elegant, but it's not very persuasive in my view. So even if you lose on jurisdiction, I think you don't really, you're not gonna win on your definition of energy. That's just one judge's view, but I'm impressed at the argument. Your Honor, may I respond on the preservation question? Yeah, that's the key. Without it, you're dead. Thank you, Your Honor. And as the court recognizes, it wasn't the answer. We explained what the proper construction of 601C was at the outset of this case. FERC, in its initial decision, did not quarrel, did not object to our understanding of what 601C made. Instead, it made its preliminary- The problem is the petition for rehearing. Well, and I'm setting the background for why it was. This didn't have to be in the petition for rehearing because there was no error in the original answer as to 601C. We explained what 601C meant in the answer. FERC did not quarrel- Well, wait a minute. As you recognize, you had to win on one of these two, and you ignored the energy and capacity argument and petitioned for rehearing. Well, because in the initial answer, FERC had made no quarrel with that. They had gone off the rails on a preliminary question. They had not made this error. And what I think Columbia Gas instructs is that we don't have to guess or predict an error that FERC might make upon rehearing. And I think that's the circumstance. And I think what's instructive here is FERC, when it actually moved past the jurisdictional argument, knew that this was in the case. They spent three pages of their decision across several paragraphs, in fact, actively resolving this issue. And I think the fact that FERC engaged in this analysis, rested its analysis on this, engaged with this, shows that FERC recognized it was properly within the case, it was properly before it on rehearing, and thus is properly an issue that shouldn't, can and should be considered by this court in this petition. This is another example of cases we see where counsel in the D.C. Circuit presents a much more persuasive case than experts before the agency do. Thank you, Your Honor. Happy to turn to the- I'll ask you about that once. Thank you, Your Honor. I think the court understands our position on the substance. We think that FERC knows what it means when it says energy because it's written many regulations that distinguish energy and ciliary services, and it treats those categories quite differently at times. All right. I think we have your argument. Let's hear for counsel from respondent. May it please the court, Lona Perry for the Federal Energy Regulatory Commission. Counsel, you make some arguments which seem to me sort of silly. Number one, you argue it's moot. Why? There's money at stake here. If they're entitled to jurisdiction under your statute, there's money at stake. How can you say it's moot? Yes, Your Honor, I understand. And having seen that- You might have stronger arguments, but why make a really weak argument? And secondly, the argument that this was a declaratory statement that has no significance, as if this was an enforcement proceeding, also seems to me to be a rather silly argument. The primary argument there, Your Honor, was that this court has held that there is no statute which provides for direct review of commission orders interpreting FERPA. And the point is, these orders do nothing. But those are cases of an enforcement proceeding, but in an effort to try to circumvent enforcement. That's not this case. There are cases where there are petitions filed directly with the commission that the commission acts on, and this court has said that there is no jurisdiction over those because they only interpret FERPA. So we felt that it's an issue that had to be raised because this court has said that commission interpretations of FERPA are not subject to direct review. Okay, all right. Let me go to the issue that puzzles me in no way. What is the relationship between the two criteria by which FERPA jurisdiction is established? We just discussed. What is the relationship between that, on the one hand, and whether or not the code generator is selling to more than one customer? What is the relationship between those two concepts? The relationship between those two concepts is that the mandatory purchase obligation under FERPA only applies to the extent that the utility is purchasing the total output of the qualifying facility. So in the moment the utility, excuse me, the generator sells to more than one customer, they're out of FERPA as far as you're concerned? Then it becomes, well, at least it becomes commission jurisdictional then because it is selling an interstate commerce to a third party. But the, where it is- I don't know why you say interstate. It's selling wholesale, which could be two companies in South Carolina. It doesn't have to be interstate. The point is what FERPA did was it prevented qualifying facilities who interconnect with the grid from being considered FERPA jurisdictional just because of that. But the point is if they interconnect to the grid and then their power is transmitted in interstate commerce to a third party, then that does become FERPA jurisdictional. The purpose situation is where they entirely sell all of their output to their interconnecting utility. And so under FERPA, FERPA gave an exception for that. So that is only state jurisdictional. Okay, all right. So in other words, if a code generator sells to more than one, it sells 10% of its power to another customer. It's out of FERPA? Well, it's out of state jurisdiction. It can still be a qualifying facility. Well, that's what I thought. You said a moment ago, it couldn't be a qualifying facility unless it sold all its power to one customer. No, it's not state jurisdictional. I'm sorry if I misspoke, Your Honor. But it's not state jurisdictional if it sells to more than one party, which is what Order 2003 says. So in other words, it's still FERPA? It can still be FERPA. Okay, that wasn't clear in your briefs. I was a little confused about that. Yes, Your Honor. But it's just what we're talking about here is where the transaction is entirely within it. They're selling all of their output to the one interconnecting utility. Then under FERPA defines that as being a state jurisdictional. So why was there ever any discussion about selling to a second customer? I don't even understand why it was in your briefs. The reason it was in the briefs was just because below, although they haven't raised it here, but below one of the rationales that the petitioner relied on was the fact that they were planning, perhaps, if the purchase agreement was not renewed to sell to third parties. So you're raising an issue in this Court of Appeals that wasn't raised below? It was raised below, but they haven't pressed it. It's not in their briefs. It's not anywhere else. So I'm sort of mystified. Okay, so the bottom line is it can still be FERPA if pursuant to FERPA, even if there's a sale to two customers. It's not state jurisdictional under FERPA if it's the sale to two customers. And this goes to the implementation by the state. Then it would be FERPA's jurisdiction. That's right. For both the original sale and the secondary sale? There could be circumstances where some of the sales are jurisdictional to FERPA and some are not. Well, how, why? Well, it depends. But the point being in this case is that what FERPA said was if all of your output is being sold to one, your connecting utility, then that is state jurisdictional. And therefore, that sale, plus the interconnection connected with that sale are necessarily within the state's implementation of FERPA. All right, what about the, they can win on either argument. You make a very persuasive argument that they forfeited the energy and capacity. They didn't raise it in the position for rehearing. But what about pursuant to FERPA? As they point out, they at least have a couple of sentences raising that argument. If they win on that, they win. I agree, Your Honor, that with the discussion earlier, that there is only this one sentence in the rehearing request at JA352 that says, as explained in Cherokee's earlier pleadings, its sales of reactive service are not made pursuant to a state regulatory authority's implementation of FERPA. And then there's a cite to 292.601. And that's the only reference to 292.601 anywhere in their rehearing request. Well, let's assume they made the argument properly. Then what about, they certainly make the argument before us. And how do you respond to their argument that South Carolina did nothing, NISHDA? Excuse me, that's a separate question. You shouldn't have done that. But South Carolina did nothing, so there's no implementation of FERPA. What do you say about that? I would say that that's not the case at all, Your Honor. In the first place, they are citing to, for this purported requirement that- Wait a minute, did South Carolina do anything about this? Well, certainly, South Carolina approved the purchase agreement. Ah, but that's not the key. Is it, what about the interconnection agreement? Well, the interconnection agreement, the commission pointed out at JA7, note 36 in the initial order, the commission pointed out that a schedule of the purchase power agreement itself specifies that interconnection service must be contracted for separately pursuant to the South Carolina generator interconnection procedures. And so the purchase agreement itself that South Carolina approved said specifically the service must be contracted for separately pursuant to their state interconnection procedures. Yes, but the petitioner's argument is that the reactive power, what is it called, reactive power? Reactive power, yes, Your Honor. Was, it was, it comes about because of the interconnection agreement, not the power agreement. But that's the point, Your Honor, is that the interconnection is also under South Carolina's jurisdiction. Specifically- But did South Carolina do anything about the interconnection agreement? South Carolina- Did they? Their argument that South Carolina was required to approve the interconnection- Why don't you just answer my question. Did South Carolina do anything? I am not sure, Your Honor, what South Carolina did with respect to the interconnection agreement. And there was nothing in the record that said one way or the other what they did. But there is nothing that requires that South Carolina approve this individual interconnection agreement. The reference that they make to the requirement that, the reference that they make to the requirement that the, that it be filed is a statement from the Notice of Proposed Rulemaking at 113 for paragraph 61020 at paragraph 26. And I will note that that language that was discussed in the Notice of Proposed Rulemaking that they are citing to was not the language that was adopted in the final rule. If you look at paragraph 671, you will see there that the commission says in paragraph 99 that it is not accepting that language that it originally had in the Notice of Proposed Rulemaking. And this is at 114 for paragraph 61102, but they are adopting language, which is at issue here, which is pursuant to a state regulatory authority's implementation of purpose. So the site that they are giving for the requirement that South Carolina approve this interconnection agreement, nothing says is not applicable because it's not even talking about the same language. Well, what is your view of the laws? If I can bring you back from the weeds. Does South, in order to have an implementation according to purpose, does South Carolina Commission have to do anything? Let's just assume it blank slate. The commission and the Supreme Court, and if you look at FERPA versus Mississippi, 456 U.S. at 751, they point specifically that states have latitude in their implementation of FERPA. The commission was not directing that they exercise their jurisdiction in any particular way. They could issue regulations, they could resolve things case by case. Counselor, you're not answering the question. South Carolina does nothing, nothing at all, hypothetically. Is that implementation of FERPA? When you say they do nothing, the point is they have interconnection procedures. They haven't done nothing. And the question is whether they have to have each individual, they have to approve each individual interconnection agreement, but they have interconnection procedures. It's not that they have done nothing. That's what I'm saying, they have regulations, but is it implementation under FERPA if they do nothing with respect to this interconnection agreement? Implementation of FERPA is specifically can be- Your theory is it was under South Carolina's jurisdiction if there was any problem would have been brought up before South Carolina, therefore it's implementing pursuant to FERPA. That's implicitly your argument, isn't it? That's right, Your Honor. Why don't you just say it? But you know what, I'm not sure you're right about that. But in any event, I understand your argument. Yes, Your Honor, and I would like to point out again, the record does not show what South Carolina did with respect to FERPA. It's a fair point. It doesn't even put the agreement into FERPA. It's a fair point. So we don't know what South Carolina did with respect to the interconnection. I was just trying to understand what the law was. I have a question about reactive power. And I mean, just if you could explain to me, I mean, is reactive power can sometimes be an ancillary service, is that right? Yes, it can. But not in this circumstance. So how is this circumstance different from a situation in which it's an ancillary service? It goes, Your Honor, to the language of the FERPA regulations that are issued here, specifically the phrase energy and capacity or energy or capacity, which is used throughout the FERPA regulations. If you look at paragraph 16 of the commission's rehearing order, it points to the fact that at order 671, where these regulations were adopted, the order talks about electric energy, not energy or capacity, even though that's what's used in the regulations. And the reason why the commission does that is because the FERPA statute says electric energy. And so the regulations- That's one part of your argument. The other part of their argument is that it's an ancillary service. Well, if I could, Your Honor, if in order 671, they talk about order 69, 69 is where they first adopted the FERPA, order 69 is where they first adopted the FERPA regulations. And when they were adopting those FERPA regulations, there were people who argued, much like the petitioners do here, that the FERPA statute only says electric energy. And therefore, we don't have to pay for anything except for the costs of producing the energy, the variable costs of producing the energy. We don't have to pay for the capacity, for example, that is needed to produce that energy and the fixed costs associated with that. And the commission rejected that argument because it found that electric energy, and this is at order 69, 45 Federal Register at 1225, the commission rejected that specifically because it said electric energy in the FERPA statute is intended to have the same scope as electric energy does in section 205, which means that everybody acknowledges that under section 205, which says electric energy, just like FERPA does, everybody acknowledges the reactive power is within the scope of that regulation, within the scope of that statute. And so the commission was saying, we believe that the FERPA jurisdiction is coextensive in that sense with 205 because it uses the same phrase. And you have to remember that these regulations were promulgated in order 69 in 1980. And at that time, as the commission discusses in order 671, there were no independent generators. There were maybe a few, there was no market for independent generation. So there was no such thing at the time as an independent charge for ancillary services like reactive power. It wasn't until the 1990s, I believe 1990 was the first time the commission actually approved a separate charge for reactive power. And it was 1996 when they issued order 888 defining ancillary services and requiring them to be unbundled. But the commission made clear in order 69 that it intended for electric energy under FERPA to be interpreted as broadly as electric energy under section 205, which everybody agrees includes reactive power. Thank you. Thank you. Are there further questions? Oh, thank you. Nothing. I believe council for intervener wish to be heard. Thank you, your honor. I'm Misha Taylor for Duke Energy. I think the problem in this petition case is when council before this court is making completely different arguments from the ones that were presented properly to FERC. As Judge Shulman properly pointed out, the argument that was presented before FERC was that somehow comparability principle was a standalone basis for jurisdiction. And that doesn't really make any sense, which is why council didn't front it here. Now their argument on their lead point, whether the sales are pursuant to the state regulation on FERPA is somehow that because the interconnection wasn't filed with the South Carolina PSC, that somehow it's outside of FERPA. There's nothing in the FERPA regs or any orders of FERC that require South Carolina to mandate the filing of this kind of agreement. Did they make the argument, your opponents, that because nothing was filed in front of South Carolina, it was not implementing pursuant to FERPA? Did they make that argument in the rehearing petition or did they make it only in this court? I believe they made it only in this court. Then why didn't you say that? I believe that was attempting to say that, but I apologize. That was not as clear as I should have been. Now I will say that if they did make that argument, it wouldn't make a whole lot of sense. If my aunt had wheels, she'd be a trolley car. The question is whether they made the argument. They did not make the argument. And the other argument they didn't make on their other element, of course, is the argument that they should win on this independent basis. This is an energy. Clearly, this was an independent basis on which they could win. So if they thought, FERC, hey, you messed up in your order. You didn't say that we should win on this independent basis. Surely you shouldn't have raised that. This isn't a situation like Columbia Gas where FERC comes up with a new reason that you should lose in its rehearing denial. And then, of course, the parties are justly agreed. This is a basis on which they say, independently, we should win. Obviously, in that circumstance, they have the obligation to properly present that to FERC. Your Honor, as no further questions, I will almost be within my two minutes. All right, thank you. I think Counsel for Petitioner was out of time. We'll give you two minutes. Thank you, Your Honor. I'd just like to focus on one narrow point, if I may. And it's as the court has identified, the essential constructs of the commission's decision on the point about pursuant to the state's implementation of FERC is all it says is that the interconnection agreement here is South Carolina jurisdictional and not FERC jurisdictional. And that's the sum total of the FERC decision. Counsel now, as they've made clear, have to defend that by saying that implicitly means it is made pursuant to FERPA. We've explained reasons why we don't think that's correct. But the essential problem with FERC is FERC never said that. There's nothing that they can point to in the FERC commission's decision that actually connects the dots between a finding that it is non-FERC jurisdictional and subject to the commission's jurisdiction with determination that this fits within what the regulation actually requires. And that is it is made pursuant to the state regulatory's implementation of FERPA. And that's the essential gap. All of the other issues we're talking about are coming up because FERC never actually answered the question it needed to answer. We would submit the straightforward resolution of this case is to recognize that this argument was plainly raised in the rehearing petition. FERC didn't address it, and there should be a remand for FERC to actually address the question that the regulation obligates FERC to answer. And that counsel's argument now that doesn't appear anywhere- Just one curiosity before you sit down. Why did you not submit your client, submit the interconnection agreement before FERC? Before FERC? Yeah, it's not in the record. That's true, your honor. And that goes to the point of this, as we had understood it was a section 205 and 206 proceeding on the comparability principle. I agree with everything the court has said that we have to get outside the regulation, but our point has all along been that this is no basis for us to be, jurisdiction to be stripped. And that argument still holds. My only problem with your argument is the phrase all along. Sorry, what's the phrase? Is the phrase all along. All along. Meaning you've been raising it all along. Well, your honor- That's my only problem with your argument. Your honor, just respectfully, we made this argument very clearly in the rehearing petition at 352 to 353. FERC did not address it. There's simply nothing that makes the essential connection between jurisdiction and what the regulation requires. And for reasons we've described, we don't think they can make that argument as a subject matter. We don't think that's right. But the answer is FERC didn't do it. And so council can't defend what FERC did to try to match up to the regulation based on argumentation or analysis that FERC itself never gave. Thank you. Thank you. We'll take the case under advisement.
judges: Wilkins, Rao, Silberman